IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEREMY PETERS and KENNETH WINSLOW, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) Case No. 3:18-cv-00564 |
| v. | ) ) |
| | ) JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, and OFFICER DOE #1, | ) MAGISTRATE JUDGE NEWBERN ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Nashville" or "the City"). (Doc. No. 84). Plaintiffs filed a Response (Doc. No. 94), and Metro filed a Reply (Doc. No. 103).

For the reasons stated below, the Motion will be **GRANTED** in part, and **DENIED** in part.

## I. BACKGROUND[1]

Plaintiffs believe that they have a religious mandate to share their religious, political, and social beliefs by distributing literature, carrying signs, and engaging in discussions with individuals and "amplified open-air preaching." (Am. Compl., ¶¶ 49-52). Plaintiffs state that they have a religious mandate to engage in these activities in public spaces in Nashville, including the plaza and sidewalks outside the Bridgestone Arena (the "Arena"). (Id., ¶¶ 53-54).

---

[1] The facts are as alleged in the Amended Complaint. (Doc. No. 80). For ease of reference, citations to the Amended Complaint are "Am. Compl., ¶ __".

The Bridgestone Arena is owned by Metro Nashville and controlled by the Sports Authority of the Metropolitan Government of Nashville and Davidson County, Tennessee (the "Sports Authority"), a public instrumentality of Metro Nashville. (*Id*., ¶¶ 20-24). The Sports Authority hired Powers Management, LLC, to manage the Arena. (*Id*., ¶ 25). Powers Management promulgated policies (the "Arena Policies") governing conduct in and around the Arena, including the outdoor plaza areas. (*Id*., ¶¶ 26, 33). As relevant here, the Arena Policies ban signs that are "distasteful in nature or content" and prohibits distributing materials of any kind "without the express written consent from Arena." (*Id*., ¶¶ 35-43).

Powers Management places barricades in and around the plaza area, including in locations that encroach upon the public sidewalks and enforces the Arena Policies within the barricaded area. (*Id*., ¶¶ 30, 31).[2] Plaintiffs allege that the City allows Powers Management to place barricades "in any location near the plaza area without limitation" and that when barricades are placed in "any location near the plaza area, including when the barricades encroach upon the public sidewalks," the City and its officers enforce "all directives from Powers Management." (¶ 32).

Plaintiffs claim that "for many years," they have attempted to share their message with signs, "tracts," and by speaking to the public in the plaza area and on sidewalks outside the Arena and have been informed that such activities violate the Arena Policies. (*Id*., ¶¶ 56-61). Plaintiffs claim they were ordered to stop and threatened with arrest. (*Id*., ¶ 60-61). Plaintiffs claim "City agents and/or employees" permit the general public to "travers[e] through and between the temporary barricades without restriction," while banning Plaintiffs from accessing the same areas. (*Id*., ¶¶ 64-66).

---

[2] The Amended Complaint alleges, "Powers Management, acting on behalf of the Sports Authority as the City's agent, places barricades at locations near the plaza area that encroach upon the public sidewalks and then enforces the limitations on constitutional rights stated in the [Arena Policies]." (¶ 31).

Plaintiffs identify five specific occasions in 2017, 2018, and 2019 when they were prevented from proselytizing. On November 8, 2017, and December 31, 2017, while they were attempting to share their message in the plaza area and on the sidewalks outside the Arena, someone named Dupie told Plaintiffs that if they did not remain outside the plaza area, they could go to jail for trespassing. (*Id*., ¶ 69-73). Plaintiffs allege Dupie is an agent for the city of Nashville and was enforcing the Arena Policies "at the discretion of Powers Management, acting on behalf of the Sports Authority as the City's agent."[3] (*Id*., ¶ 73).

Around this time, Plaintiffs' attorney sent a letter to the City's legal department. (*Id*., ¶ 74). The details of the letter are not included in the Amended Complaint. Plaintiffs describe the letter as an effort to "avoid litigation and reach an amicable resolution of the issues." (*Id*.). An attorney from the City's legal department sent a one-sentence response stating they had "discussed this matter with the Metro Nashville Police Department." (*Id*., ¶ 75). Not long after this correspondence, Plaintiffs claim an "officer in charge" stated that the City's legal department informed him that Plaintiffs could be arrested for trespassing if they displayed signs in the plaza area and sidewalks outside the Arena. (*Id*., ¶ 76).

Plaintiffs nevertheless persisted in their efforts. On February 2, 2018, a Metro police officer, Officer DOE #1, demanded Plaintiff Peters stop distributing literature in the plaza area and on sidewalks outside the Arena. (*Id*., ¶¶ 7, 80).

On June 6, 2018, Plaintiff Peters and his associate were attempting to share their message in non-ticketed areas outside the Arena when "City agents and/or employees" told them "no one could express their messages in the plaza area(s) and sidewalks outside the Arena." (*Id*., ¶¶ 83-

---

[3] Though not alleged in the Amended Complaint, Metro states that Dupie is Metro police officer Lieutenant Lee Dupie. (Doc. No. 85 at 5).

85).  Plaintiffs claim two "City officers" demanded Plaintiff Peters and his associates "move beyond the temporary barricades and stop distributing literature or speaking to people about their message" in the barricaded area. (*Id*., ¶ 86).

Finally, on September 29, 2019, a free public event called "PredsFest 2019" was held at the Arena and Walk of Fame Park, a city-owned park adjacent to the arena. (*Id*., ¶ 87-89).  Plaintiff Winslow attempted to enter both the plaza area of the Arena and Walk of Fame Park "for the purpose of engaging in free speech and free exercise of religion" (*Id*., ¶¶ 94, 99). Although members of the general public entered these areas without being asked to present a ticket, Winslow was told that only ticket holders could enter these areas and was prevented from entering. (*Id*. ¶¶ 95-96, 101-02, 105-06).[4] Plaintiffs claim that Winslow was prevented from entering these areas "[p]ursuant to [Arena Policies] and directives from powers Management, acting on behalf of the Sports Authority as the City's agent, in accord with the City's policy, practice and custom." (*Id*., ¶¶ 97, 103).

Plaintiffs claim they were prevented from sharing their religious message in violation of their rights to freedom of speech and free exercise of religion under the First Amendment, and right to due process under the Fourteenth Amendment.  Plaintiffs seek a declaratory judgment declaring the challenged Arena Policies unconstitutional on their face and as applied to Plaintiffs, Metro and Officer DOE #1 violated Plaintiffs' constitutional rights by prohibiting them from expressing their messages, and prohibiting enforcement of the Arena Policies "in the manner

---

[4]  The Court's use of passive voice in recounting Plaintiff's allegations regarding PredsFest mirrors the allegations in the Amended Complaint. Indeed, Plaintiffs do not identify any actor who is alleged to have prevented Winslow from entering Walk of Fame Park or the Arena plaza. (*See* Am. Compl., ¶¶ 95, 101 ("Plaintiff Winslow was prevented" from entering Walk of Fame Park and the Arena plaza); ¶¶ 96, 102 ("Plaintiff Winslow was told only ticket holders could enter")).

Defendants enforced [the Policies] against these Plaintiffs and their associates." (*Id*. at 25, 27, 28). Plaintiffs also seek an award of damages against Metro and Officer DOE #1, and attorneys' fees.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is 'plausible on its face.'" *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court is not bound to accept as true legal conclusions couched as factual allegations. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## III. ANALYSIS

Plaintiffs assert Metro Nashville violated their constitutional rights and seek relief under 42 U.S.C. § 1983. Claims under Section 1983 must allege: (1) that a defendant acted under color of state law; and (2) that the defendant's conduct deprived the plaintiff of rights secured under federal law. *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 653 (6th Cir. 2014). "To establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official

5

decisionmaking channels.'" *Id*. at 660 (quoting *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. (quoting *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978)). Accordingly, "to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead (1) that a violation of federal right took place, (2) that the defendants acted under color of state law, and (3) that the municipality's policy or custom caused that violation to happen." *Id.* (citing *Lambert v. Hartman*, 517 F.2d 433, 439 (6th Cir. 2008)). A plaintiff must "identify the policy, connect the policy to the [County] itself and show the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

Defendants argue Plaintiff Winslow's claims arising out of PredsFest should be dismissed because they do not identify *who* prohibited Winslow from entering the PredsFest areas and, therefore, fail to allege violation of a constitutional right by a state actor. With regard to the allegations as a whole, Defendant argues that Plaintiffs have not alleged sufficient facts to plausibly allege the existence of a municipal policy or custom or that the policy or custom caused the alleged constitutional violations. Finally, Defendants argue that Plaintiffs do not allege sufficient facts to state a claim based on a failure to train.

### A. Allegations Regarding PredsFest

Defendants argue the claims arising out of Winslow's attempts to enter PredsFest areas should be dismissed because none of the allegations identify a state actor. Plaintiffs contend that it is sufficient to allege Winslow was prevented from entering the PredsFest areas "pursuant to the [Arena Policies] and directives from Powers Management, acting on behalf of the Sports Authority

6

as the City's agent, in accord with the City's policy practice and custom." (Doc. No. 94 at 5 (citing Am. Compl. ¶ 96)).

The Court agrees the claims arising out of PredsFest should be dismissed. The PredsFest allegations, which are written exclusively in passive voice, do not identify any actor (state or otherwise) who is alleged to have prevented Winslow from entering Walk of Fame Park or the Arena plaza. (*See* Am. Compl., ¶¶ 95, 101 ("Plaintiff Winslow was prevented" from entering Walk of Fame Park and the Arena plaza); ¶¶ 96, 102 ("Plaintiff Winslow was told only ticket holders could enter")). Plaintiff Winslow may have been prevented from entering PredsFest, but without any details regarding who prevented him from entering, the alleged constitutional violation is not attributed to anyone, let alone Metro. Even if Plaintiffs plausibly alleged that the Arena Policies or enforcement of those policies was a Metro policy or custom (which, as stated below, they have not), this would not relieve Plaintiffs of the requirement to plausibly allege a constitutional violation by someone acting under color of state law.

**B. Municipal Policy or Custom**

Defendant argues that Plaintiffs have not alleged sufficient facts to allege plausibly the existence of a municipal policy or custom or that the policy or custom caused the alleged constitutional violations. (Doc. No. 85 at 7-9). Plaintiffs contend that they have sufficiently connected the Arena Policies to Metro by alleging that Metro adopted the Arena Policies, that Metro enforces the Arena Policies, that Powers Management acts on behalf of Metro as its agent, and that Metro allows Powers Management to implement the Arena Policies. (Doc. No. 94 at 4).

The Amended Complaint is heavy on "labels and conclusion" and light on factual allegations. For example, Plaintiffs allege Metro adopted the Arena Policies and that Powers Management is Metro's agent. (*Id.*, ¶¶ 27-32, 36, 43). Plaintiffs also allege that Metro has a

7

"policy, practice, and procedure" of allowing Powers Management to implement the Arena Policies and allowing Powers Management "unfettered discretion to determine if speakers may speak" and to exclude speakers "based on content and/or viewpoint of a message," to ban speakers "based upon content or viewpoint of the message," and to "ban speakers under an enforcement scheme approved by the city." (*See* Am. Compl., ¶¶ 113-115). These are precisely the sort of unsupported "labels and conclusions" and "naked assertions" not entitled to the presumption of truth. *See Iqbal*, 566 U.S. at 678 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

After eliminating such conclusory allegations, the factual allegations connecting alleged constitutional violation to a policy or custom of Metro Nashville are: (1) that Metro Nashville, through the Sports Authority, leases the Arena to Powers Management, which promulgated and enforces the Arena Policies; (2) on four occasions in 2017 and 2018, Metro police officers prohibited Peters and his associates from "expressing their messages in the plaza areas and sidewalks wherever the barricades encroached upon the public sidewalks outside the Arena"; and (3) the Metro legal department was aware that Metro police prohibited Plaintiffs from proselytizing in the Arena plaza and sidewalk area and told Metro police they could arrest Plaintiffs for trespassing if Plaintiffs displayed signs in that area. (Am. Compl., ¶¶ 70, 73-75, 80-81, 85).[5]

Plaintiffs assertion that they have been prohibited from "expressing their message" "for many years, including from June 2017 through June 2018, does not add substantively to the

---

[5] The only person specifically identified in the Amended Complaint as a Metro police officer is Officer DOE #1. (Am. Compl., ¶ 7). The Amended Complaint refers to two additional "City Officers," Officers Wilson and Shannon, who the Court presumes are also police officers. (Am. Compl. ¶¶ 85-86). The Amended Complaint also refers to "City agent Dupie." (*Id*., ¶ 70). Although the Amended Complaint does not identify City agent Dupie's role, Defendant's brief identifies him as Metro police officer Lieutenant Lee Dupie. (*See* Def. Br., Doc. No. 85 at 5).

allegations. (*See* Am. Compl. ¶¶ 56-66). Moreover, such vague allegations are insufficient to allege plausibly the existence of a custom, particularly when Plaintiffs do not allege *who* prohibited them from proselytizing in the specified areas.[6]

Although similar to this case, Plaintiffs reliance on *Aubrey v. City of Cincinnati*, 815 F. Supp. 1100 (S.D. Ohio 1993), is misplaced. *Aubrey* involved an individual who sought to display religious messages at a sports venue leased to the Cincinnati Reds by the city. The Cincinnati Reds promulgated a policy prohibiting signs and banners not "in good taste," as determined by Reds' management. *Id*. at 1102. Pursuant to this policy, an assortment of on and off-duty city police officers and private security officers prohibited Reverend Aubrey from displaying a banner with a religious message during Game Two of the 1990 World Series. *Id*. at 1103. Cincinnati sought summary judgment in its favor on grounds that the policy in question was that of the Reds and that the city had not adopted or promulgated any policy pertaining to speech for Reds' games. *Id*. at 1105.

The *Aubrey* court rejected Cincinnati's argument, finding that the city had an affirmative policy of allowing on-duty and off-duty police officer to enforce the Reds' regulations, including the banner policy. *Id*. at 1106. This finding, however, rested on more than the mere enforcement of the banner policy by city police. *Id*. The court found that the city affirmatively chose to enforce the Reds' policy through its police force because the Director of Safety, to whom the city council delegated the authority to make policy decisions, reviewed the Reds' rules and regulations and approved the Reds' security plan. *Id*. at 1105-06. The approved plan included the use of Cincinnati

---

[6] As with the allegations about Plaintiff Winslow's exclusion from PredsFest, Plaintffs state the "for many years allegations" almost entirely in the passive voice. (Am. Compl., ¶¶ 56-62). They "have been told" and "have been ordered." (*Id*.). The allegations that identify "City agents and/or employees" state only that these actors prohibited Plaintiffs from entering the plaza area outside the Arena while the general public was allowed into the area. (*Id*., ¶¶ 62-67).

9

police officers and provided that a City Police Sergeant would coordinate the use of private security officers and Cincinnati police officers. *Id*. On these facts, the Aubrey court held the plaintiff had shown that the city made an affirmative decision to enforce the Reds' regulations. *Id*. at 1106.

The express approval of the use of city police to enforce the Reds' regulations distinguishes *Aubrey* from this case. *Aubrey*, however, was decided on motion for summary judgment rather than a motion to dismiss. At this stage, Plaintiffs are not required to submit evidence to prove their claims. Nevertheless, they must plead facts that are more than "merely consistent with liability." *Iqbal*, 556 U.S. at 678. They must allege sufficient facts to nudge their claims that Metro is liable for infringement of their constitutional rights "across the line from conceivable to plausible." *Id*. at 680.

Though it is a close call, particularly given the abundance of conclusory and passive allegations, the Court finds Plaintiffs have alleged the bare minimum to nudge their claim across the line. The Court notes that Plaintiffs have only specifically identified one of the "city agents" who prohibited them from engaging in their speech activities as a Metro police officer (Officer DOE #1). Although the Court would have been unable to conclude on its own that the other City "agents," "employees," and "officers" were Metro police officers, Defendant apparently had no such trouble. (*See* Doc. No. 85 at 3 (stating that "Plaintiff Peters claims … he was asked by Metro police officers to relocate to the other side of the barricades surrounding the plaza area or face trespass charges.")). Plaintiffs allege that the Metro legal department told the police officers that they could arrest Peters and his associates for trespassing if they displayed signs in the plaza area and sidewalks outside the Arena. (Am. Compl., ¶ 76).

10

Case 3:18-cv-00564   Document 147   Filed 11/01/21   Page 10 of 12 PageID #: 1806

Drawing all reasonable inferences in favor of the Plaintiffs, it is reasonable to infer that Metro police officers were enforcing the Arena Policies with the approval or direction of the Metro legal department. At the motion to dismiss stage, this is sufficient to allege plausibly the existence of a municipal policy or custom.

**C. Failure to Train**

To state a claim on a "failure to train" theory of municipal liability, Plaintiffs must plead facts to allege plausibly that (1) a training program is inadequate to the tasks that the officers must perform; (2) the inadequacy is the result of Metro's deliberate indifference; and (3) the inadequacy is closely related to, or actually caused, the plaintiff's injury. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). To allege deliberate indifference, the plaintiffs must plead facts that, if proven, would show "that a municipal actor disregarded a known or obvious consequence of his action," and that there are "prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997); *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005).

Plaintiffs allege that on four instances in 2017 and 2018, Metro police officers prohibited them from proselytizing in the Arena plaza and sidewalk areas and that they notified Metro legal about the alleged constitutional violations via letter on two occasions.[7] Defendants argue that the allegation regarding the "notice" is insufficient to show notice of the alleged constitutional violation. This argument has some merit. The Amended Complaint offers scant detail regarding the contents of the letters sent to Metro legal department. Describing the letters as "attempt[s] to

---

[7] As previously stated, the Court does not consider the "for many years" allegations or the allegations relating to Plaintiff Winslow's attempts to enter the Arena plaza and Hall of Fame Park during PredsFest, which are all alleged in the passive voice and do not specify an actor. (*See* Am. Compl., ¶¶ 56-67; 87-106).

11

avoid litigation," the Amended Complaint states that "Plaintiffs' counsel sent a letter to the City's legal department to avoid litigation and reach an amicable resolution of the issues." (Am. Compl., ¶¶ 74, 81). The only additional information provided regarding notice to the City is that the Metro legal department responded that they "discussed this matter with the Metro Nashville Police Department," and shortly thereafter, police officers told Peters that "the City's legal department informed them that Plaintiff Peters and his associates could be arrested [for trespassing] if they displayed signs in the plaza area(s) and sidewalks outside the Arena." (*Id.* ¶¶ 75-76).

Plaintiffs have sufficiently pleaded facts to allege plausibly that the City was on notice of the alleged constitutional violations. Plaintiffs allege they provided specific notice of the alleged violations to the City's legal department on two occasions and that the alleged violations continued after these notices. Construing the Amended Complaint in the light most favorable to the Plaintiffs, they have plausibly alleged municipal liability on a failure to train theory.

## IV.     CONCLUSION

For the reasons stated, the Defendant's Motion to Dismiss (Doc. No. 84) will be **GRANTED** in part, and **DENIED** in part. The claims relating to PredsFest (Am. Compl., ¶¶ 87-103) will be **DISMISSED WITHOUT PREJUDICE**. The remaining claims will proceed.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE